[Civ. No. 1623.   Third Appellate District.—January 27, 1917.]

## M. L. BRITTAN, Appellant, v. CHARLES H. FISHER, Respondent.

APPEAL—FINDINGS—EVIDENCE.—If there is any evidence which affords substantial support to the findings, it is beyond the power of the appellate court to disturb them, although there may be other evidence in direct opposition thereto.

ACTION TO ESTABLISH TRUST — RESTAURANT AND BAKERY BUSINESS — TAKING OF POSSESSION BY MORTGAGEE—NATURE OF TRANSACTION— FINDING SUPPORTED BY EVIDENCE.—In this action to have it declared that the defendant held the possession of the property of a restaurant, delicatessen, and bakery business, as the trustee for the plaintiff, for an accounting and termination of the alleged trust, it is held that the evidence supports the finding that the defendant took possession under his chattel mortgage and the express authority of the plaintiff solely for the purpose of protecting his own interests under such mortgage, and not for the purpose of conducting the business as a trustee, settling with plaintiff's creditors and redelivering the property remaining after such settlement.

ID.—EVIDENCE—LEGAL CONCLUSIONS—TESTIMONY OF WITNESS—LACK OF PREJUDICE.—In such an action the plaintiff is not prejudiced by allowing the defendant to give his conclusions as to the legal capacity in which he held possession of the property, and as to the legal effect of the transaction between the creditors and the defendant, where such conclusions were conclusively established by unimpeachable documentary evidence.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial.   William H. Donahue, Judge.

The facts are stated in the opinion of the court.

J. E. Pemberton, and A. G. Kazebeer, for Appellant.

Wm. O. Minor, and H. W. Brunk, for Respondent.

HART, J.—The controversy here involves the question of the ownership of a restaurant, a delicatessen, and a bakery business and the equipments, and a certain leasehold interest in the building and the basement thereof, situated at 2026-2030 Shattuck Avenue, in the city of Berkeley, in which said business was carried on and conducted.

The complaint is in two counts and the relief sought is: That the defendant, who is in possession of the property above mentioned, be declared to be the holder of said property as the plaintiff's trustee; that defendant be compelled to render an account of his acts and transactions as such trustee; that said trust be terminated and that the defendant be required to turn over to the plaintiff the possession of said property; that a receiver, *pendente lite,* to take and hold possession of said property be appointed; that a certain chattel mortgage executed by the plaintiff and one J. D. Hendrix on the restaurant property to the defendant be canceled.

The defendant, by denials and an affirmative statement of the facts of the several transactions from which this litigation arose, answered the complaint.

Findings, conclusions of law, and a judgment in favor of the defendant were filed and entered.   The cause is brought to this court by the plaintiff by appeals from the judgment and the order denying her application for a new trial.

The general contentions urged by the appellant are that the findings are not supported, and that the court erred to the

prejudice of her substantial rights in allowing certain testimony to be received.

As to the findings, the specific point made by the appellant is that the evidence shows beyond controversy that with respect to the property and the transactions appertaining thereto the defendant occupied toward the plaintiff a fiduciary or confidential relation, to wit, trustee of an express trust, and that the evidence discloses beyond peradventure, so it is claimed, that the defendant, in consummating the alleged purchase by him of the property, particularly that portion thereof which was not subject to a certain mortgage to which particular reference will hereafter be made, practiced and used "adverse pressure" and undue influence and "strong coercion," contrary to the mandates of sections 2228 and 2230 of the Civil Code. In other words, the contention is that the defendant took undue advantage of the confidential business relation existing between him and the plaintiff—that of trustee and beneficiary—and thus brought about the consummation of an unconscientious and fraudulent transfer of the title of the property to himself. It is further claimed that, as a matter of fact, no sale of the property and the business to the defendant ever took place.

The facts found by the court directly negative the above contentions. It will be conceded, of course, that if there is any evidence which affords substantial support to the findings, it is beyond the power of this court to disturb them, although there may be other evidence in direct opposition thereto. This observation merely involves the statement of a rule which has by the courts so often been declared and exemplified in the cases that its repetition is rather supererogatory than necessary.

The facts, as they are gathered principally from the testimony of the defendant and partly admitted, and as they are substantially found by the court, are these: That, on the fourth day of September, 1913, and for some time prior thereto, the defendant owned and conducted the restaurant business in the building above described on Shattuck Avenue, in the city of Berkeley; that he owned and held a leasehold interest in said building and all the equipments used in carrying on said business; that, on the day mentioned, he sold the said property and business and the lease to the building to one J. D. Hendrix and the plaintiff, for the sum of $3,250;

that, on the consummation of said sale, Hendrix and the plaintiff paid the defendant one thousand dollars in cash and executed and delivered to the defendant a number of promissory notes, payable at different dates, for the balance, securing said notes by the execution in favor of the defendant of a chattel mortgage on the property and business of the restaurant. Said mortgage contained, among others, a provision that in case there was default by the mortgagors in the payment of any of the said notes or the interest thereon accruing, then all said notes should thereupon become due and payable at the option of the mortgagee, and that the latter might, in such event, take possession of the mortgaged property and proceed at once to sell the same "in the manner provided by law," and apply the proceeds of such sale to the payment of said notes, the interest thereon, costs of sale and counsel fees, and pay the surplus, if any, to the mortgagors.

Hendrix and the plaintiff immediately took possession of the property and charge of the restaurant business, and the defendant went to Lankershim, California, and launched upon the business of raising poultry.

Hendrix and the plaintiff jointly carried on the business of the restaurant from the time that they took possession thereof until the twenty-seventh day of January, 1914. In the meantime, they had paid the defendant various sums on said notes and mortgage, thus reducing the mortgage debt to the sum of one thousand five hundred dollars.

On the said twenty-seventh day of January, 1914, Hendrix and the plaintiff found themselves well-nigh, if not quite, hopelessly in debt. In the conduct of the restaurant business they became indebted to various persons and firms in the sum approximately of six thousand dollars. They were also in default in the payment of some of the notes executed by them to the defendant. Their creditors, other than the defendant, were pressing them for a settlement of their claims, and one or more attachments had been levied upon the restaurant and the property with which it was operated.

It appears that, on or about said twenty-seventh day of January, 1914, Hendrix sold and transferred all his interest in the property and business of the restaurant to the plaintiff and so severed his connection therewith.

It further appears that, after taking over the restaurant business and the property connected therewith, Hendrix and

the plaintiff opened in the same building a delicatessen and bakery, and conducted the same in connection with the restaurant. This branch of their enterprise and the property or equipments essential to the carrying on thereof were not included in or subject to the mortgage given by them to the defendant.

The defendant testified that, prior to the twenty-seventh day of January, 1914, he received a telegram at his home at Lankershim from a Mr. Coulter, one of the creditors of the plaintiff, stating that an attachment had been levied on the restaurant, and that the financial affairs of the concern were in a bad condition and requesting him (defendant) to go to Berkeley at once. That, on the twenty-sixth day of January, 1914, he went to Berkeley, thence to the restaurant and found it under attachment; that, within a few days after he arrived at Berkeley, a meeting of the creditors of the plaintiff was held in the offices of the defendant's attorneys, in Berkeley, said meeting having been called by the plaintiff's attorney; that it was at said meeting announced by an expert, who had previously examined the plaintiff's books on behalf of the creditors, that the debts of the concern amounted in the aggregate to a sum in excess of six thousand dollars. The plaintiff, on the twenty-seventh day of January, 1914, executed and delivered to the defendant the following document:

"Berkeley, Calif. Jan. 27th, 1914.

"To C. H. Fisher.

"The undersigned, M. L. Brittan, does hereby consent that you take possession of the Golden Sheaf Cafe and everything therein contained and used in connection with the said cafe. And you are hereby authorized to take such possession under that certain chattel mortgage made by J. D. Hendrix and myself to you dated the 4th day of September, 1913, and recorded on the same day in the recorder's office of Alameda county. This license is intended to and does cover the delicatessen, bakery and grocery department connected with said cafe.

"In consideration of the foregoing, and the further consideration of your taking possession under this license it is understood that you will abide by any agreement or plan of operation that the creditors may arrive at for the future conduct of said business looking towards the running of the con-

cern provided your interests are not prejudiced thereby nor your security impaired.

                                    "M. L. BRITTAN.

"I accept the terms and conditions set forth herein.

                                    "C. H. FISHER."

At the time of the execution of the foregoing writing, one of the notes given by Hendrix and the plaintiff to the defendant was overdue by about twenty-four days.

The defendant, immediately upon the execution and delivery to him of said writing, took possession of the restaurant and the property thereof and the equipments of the delicatessen and bakery, and, so he testified, remained in possession thereof under said agreement and the chattel mortgage until about the third day of February, 1914.

When the monthly rent fell due, continued the defendant, he was unable to pay it and so called on the plaintiff and asked her to raise the money necessary for that purpose, saying that the business could not be further prosecuted unless the rent was paid. She replied that she was wholly without means to pay it. "I then told her," proceeded the defendant, "that under my chattel mortgage, if she did not pay the rent or the creditors did not pay it, I would force them to foreclose, as my mortgage was prior, and that I wouldn't put up any more money to run the place. I told her that the place was not near paying expenses, wasn't near taking in enough money to pay expenses, and they would have to settle. . . . She told me then that if she could be relieved from all the debts—the six thousand dollars of debt—and I could sell the restaurant and what stuff they had in the other storeroom and settle with the creditors, it would relieve her from any other obligation of paying any further bills and debts; and so I called a meeting then of the creditors, and told them how things were, that if they wanted to run it any longer that they put up the money to do it; and they wouldn't do it. So they sold, tried to sell, the restaurant; but they could not get any more for it than the one thousand five hundred dollars coming to me, on my mortgage. . . . Miss Brittan did try to raise the money to conduct the business between the 27th of January and the 3d of February. . . . I went with her and with her uncle and another party to Oakland to try and get the money. Stayed there with them the best part of a forenoon. They did not show up then and could not

raise the money. During the negotiations I told the creditors if they would put up the money, could settle with me, and pay up the money, they could run the restaurant; but no, they wouldn't do that, they would not put any more into it, would not even put up money to pay the rent, and said they would close it out as it was. . . . So they turned the mortgage back to me. . . . Well, on the 3d day of February—before that, after we tried to raise the money and she could not raise any more money—then I told her what had to be done—that she would either have to put up the money or the creditors would sell the place. So, before me and Mr. Mikkelsen, the man that collects the rent, she said that if we could sell the stuff in the delicatessen store and could relieve her from further responsibility of anyone trying to collect these debts after, settle with a committee or get a written statement that would relieve her from any of her debts. why she would be willing to turn the restaurant back to me." The defendant at this time again asked the plaintiff to raise the rent and called her attention to the fact that another of her notes which he owned and held was due and payable. She then said to him that "the best thing to do is to sell the property—leave the creditors to sell it—and if they would relieve her from any other liability, from any one of the creditors coming back on her to collect the bills afterwards, that had been created the last three months and a half." Adopting the suggestion so made by the plaintiff, the creditors, acting through a committee appointed from their number, proceeded to attempt to sell the property. "They couldn't get a bid for it," testified the defendant, "and they wanted to know if I would give more than one thousand five hundred dollars, and I said I wouldn't." The creditors then sold the property of the delicatessen to the defendant upon his bid for the sum of six hundred dollars, and, so the defendant testified, "agreed to release Hendrix and Miss Brittan, on the third day of February. . . . The restaurant was turned over to me and the six hundred dollars was to be given to the creditors, to be divided among them."

The notes given to the defendant by Hendrix and the plaintiff had not, down to the time of the trial, been surrendered to the plaintiff, nor had there been a release or satisfaction of the mortgage, but the defendant in effect testified that he treated the notes as canceled after he had taken back the

restaurant. In this connection, it is proper to say that the judgment herein has directed that the said notes be delivered to the clerk of the court for cancellation.

The defendant testified that, when he took charge of the restaurant under his mortgage and the agreement of the plaintiff, the business had fallen off to such an extent that it was hardly paying its running expenses, and that it did no better during the period intervening between the date he so took possession and control of it and the time the creditors settled their claims as above indicated.

The witness, Mikkelsen, a creditor of the plaintiff, testified that, at a meeting of the creditors' committee held in the delicatessen part of the building in which the restaurant was conducted after the defendant re-entered into the possession of the restaurant, it was generally agreed among the members thereof that the better plan would be to turn the restaurant and delicatessen over to the committee, to be by it disposed of to the greatest advantage of the creditors. The witness said that while the committee was then in session the plaintiff was in the adjoining room, and that he went into the said room and told her of the proposition, to which she replied that she was willing to assent to any plan or arrangement as to the disposition of the business and the property that would give her a complete acquittance of responsibility or liability for the debts of the concern.

Other witnesses gave like testimony and said, as did the defendant, that the plaintiff repeatedly declared that she could not get the money necessary to pay off the debts of the concern.

The above synoptical statement of the testimony as submitted by the defendant is sufficient for the purposes of this decision. While it is controverted in its vital particulars by the plaintiff, the court, having accepted it as a truthful statement of the facts of the controversy, was thereby warranted in concluding, as it did conclude, that the defendant took possession of the property under the mortgage and the express written authority and direction of the plaintiff, not with an understanding and agreement that he would hold the said property and conduct the restaurant business as a trustee or receiver for and on behalf of the plaintiff and to redeliver to her said property or any part thereof, but solely for the purpose of protecting his own interests under his

mortgage and, if necessary for that purpose, to sell all said
property; that the composition effected with her creditors,
whereby she was released from all further liability upon
their claims, and the satisfaction of the defendant's debt
against her, were the culmination of her own agreement with
the defendant, and constituted a full, fair, and adequate con-
sideration for any interest she might have had in the prop-
erty; that the defendant did not, during the period he was in
possession of the property, receive sufficient profits from the
conduct of said business with which to repay himself for all
advances made by him to the plaintiff's creditors and for all
expenses incurred by him in carrying on said business; that
the plaintiff was not ready or able to pay the defendant the
amounts paid by him to her creditors and the expenses in-
curred by him in the conduct of said business during the
period mentioned.

The court did not directly find, and, indeed, it was not es-
sential that it should do so in view of the findings above
adverted to, that there was no adverse pressure or coercion
used by the defendant to secure the assent of the plaintiff to
the arrangement finally crystallized. As above stated, the
history of the transaction as detailed by the findings directly
negatives the idea of coercion and undue advantage on the
part of the defendant in said transaction. Indeed, no such
element could enter into the case under the findings. Nor
was there the slightest proof of coercion. Counsel, it is true,
refer to the fact that the defendant called upon the plaintiff
to furnish the money with which to pay the rent which fell due
within a few days after he resumed possession of the prop-
erty, and declare that "clearly this demand regarding the
rent was used to force her (plaintiff) into assenting to what-
ever she did assent." But the trial court attached no such
significance to that circumstance, and certainly we can con-
ceive of no reason why this court should.

Our conclusion upon this branch of the case is that the
findings are sufficiently fortified by the proofs and cannot,
therefore, justly be disturbed, and that the conclusions of
law and the judgment are supported by said findings.

The appellant complains of the rulings of the court in
allowing the defendant to say, in reply to a question by his
attorney, that he "held possession under that agreement and
the chattel mortgage until about the 3d of February," and

in refusing to strike out the statement of the witness, Bracken, that "the creditors sold to Mr. Fisher finally." The ground of the objection to said testimony was that it involved conclusions of the witness—the first as to the legal capacity in which the defendant held possession, and the second as to the legal effect of the transaction between the creditors and the defendant.

Strictly speaking, the objections upon the ground stated were well taken. But the testimony so brought into the record was wholly without prejudice. The fact that the defendant was entitled to take possession under his mortgage was shown by unimpeached and unimpeachable documentary evidence. The fact that he was authorized in writing by the plaintiff to take possession under said chattel mortgage was likewise shown. This testimony conclusively established the fact to which the testimony complained of related, and, therefore, the latter testimony, involving as it did the conclusion of the witness, cannot be held to have added anything to the intrinsic probative force of the competent testimony by which the fact was proved.

The statement that "the creditors sold to Mr. Fisher finally" is in a sense true—they did sell their interests as creditors to Fisher; but even if the witness thus intended to say that the restaurant was sold by the creditors to Fisher, the statement so made was of little material importance in view of the full explanation made by Fisher of the circumstances of the whole transaction. The fact is, as we have shown, the defendant was himself authorized by the mortgage to sell the property, and by the written direction of the plaintiff to "abide by any agreement or plan of operation that the creditors may arrive at for the future conduct of said business looking towards the running of the concern, *provided your interests are not prejudiced thereby nor your security impaired.*" The testimony of the defendant sufficiently shows to warrant the finding, which in effect was made, that the conditions developed in the affairs of the restaurant were such as to make it necessary to sell the restaurant and the property connected therewith to protect the rights of the defendant under his mortgage. The defendant, indeed, was directed and expressly authorized by the plaintiff to dispose of the property and the business in any manner he might choose, provided that in so doing he secured to the plaintiff

release from any further liability for the debts of the concern. This arrangement he succeeded in accomplishing. Thus, even if not under his mortgage, he had the right to sell it, and no one will question his right to buy it so long as he acted in good faith toward the plaintiff. As stated, whether he bought from the creditors or from himself as the mortgagee in possession under his mortgage, is, under the circumstances and in the last analysis, wholly unimportant.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.