THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUSTO BLANCO CANDELARIO, Defendant and Appellant.

Nos. 15806–15807. Argued December 2, 1954.—Decided December 30, 1954.

Luis F. Candal for appellant. J. B. Fernández Badillo, Acting Attorney General, Rafael L. Ydrach Yordán and Ramón Olivo Nieves, Fiscal and Special Fiscal of the Supreme Court, for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

Appellant was tried by a jury for murder consisting, as recited in the information, in that the defendant "on or about October 16, 1953, and in Cabo Rojo, Puerto Rico, . . . unlawfully, wilfully, with criminal intent, malice aforethought, deliberately, and with the resolute and deliberate intent of unlawfully killing, thereby showing that he had a perverse and malignant heart, attacked and injured Pilar Vargas Ríos, a human being, with a knife, which is a deadly weapon, wounding and plunging her into the sea from a motor boat owned by him, at a distance of one mile off the shore, as a result of which the said Pilar Vargas Ríos died from asphyxia by submersion (drowned) on the said October 16, 1953." He was also jointly tried, but by the court without a jury, for the unlawful carrying of the knife with which he wounded Pilar Vargas Ríos.

The jury found him guilty of murder in the second degree, and the presiding judge, on his part, found him guilty of unlawful carrying of weapons. The defendant took separate appeals from the adverse judgments rendered in both cases, which we have consolidated at his instance, and in which he assigns the following errors:

"First: The lower court erred in instructing the jury, to the prejudice of defendant and without evidence warranting such instruction, on the crime of murder in the second degree;

"Second: The lower court erred in accepting the verdict of guilty of second-degree murder because it was contrary to the evidence and the law;

"Third: The lower court erred in denying the motion for a new trial;

"Fourth: The lower court erred in finding the defendant guilty of carrying a weapon, which was neither seized nor described, nor such offense established."

Appellant's contention is that the evidence in the instant case did not warrant an instruction to the jury on second-degree murder. The first three assignments are grounded on this contention. Thus, if this contention is erroneous, those three errors will fall by the wayside.

▆▆▆▆ The *Fiscal* of this Court sums up correctly the evidence of The People and of the defendant as follows:

"The evidence of The People showed that on October 16, 1953, defendant Justo Blanco Candelario, together with Hilarión Cuevas Torres, Pilar Vargas Ríos, and Carmen Ramos, the latter two prostitutes, had been drinking in a bar owned by Pedro Feliciano Candelario at a place known as Joyuda of the jurisdiction of Cabo Rojo. After dark, appellant invited his companions to go out in his motor boat which he used for fishing. While they were at a distance from the shore, appellant had sexual relations with Pilar Vargas Ríos. Afterwards the two engaged in an argument because the former urged Pilar Vargas Ríos to put an end to her relations with another man and to live with him only. Pilar Vargas replied that she loved the other man and not him. The defendant, who shortly before had taken a four-inch red-handled knife out of a coat, darted toward her, wounding her on the right side of the chest. He then plunged her into the water. Carmen Ramos, the other woman on the boat, jumped into the water to rescue her friend. Appellant immediately overturned the boat and they all fell into the water. Hilarión Cuevas Torres reached Pilar Vargas Ríos, but she was already dead. He helped his friend Carmen Ramos to the boat and left her holding on to one end of the boat with Justo Blanco Candelario, and swam toward the shore to get help. In the meantime, the screams for help uttered by Justo Blanco Candelario and Carmen Ramos were heard ashore by Juan Rivera, who together with José Monserrate Ruiz reached the shipwrecked persons in another boat and brought them ashore.

"In support of the evidence, the prosecuting attorney offered the testimony of Dr. Angel F. Padilla, who performed an autopsy on the body of Pilar Vargas Ríos, and the testimony of Hilarión Cuevas Torres and Carmen Ramos, known as Tongolele, who were with defendant and the deceased on the boat ride. He also offered documentary evidence consisting of photographs of Pilar Vargas Ríos' body.

"The evidence for the defendant consisted of the testimony of Pedro Feliciano Candelario, owner of the establishment where the parties had been drinking in the afternoon of October 16, 1953; Angel Rivera and José Monserrate Ruiz, who rescued defendant-appellant and Carmen Ramos; María Esther Rodríguez, whose testimony tended to prove that Justo Blanco Candelario and the victim were living together; and Jesús del Valle, a relative of the deceased, who was present when her body was removed to the cemetery for an autopsy.

"The parties further stipulated the fact that the body of Pilar Vargas appeared on the western or northwestern side of the Isla de los Ratones, and that it was found by Julio Agrait and a police officer, who removed it to the Joyuda shore where her relatives claimed it. The accused himself, Justo Blanco Candelario, took the witness stand. The theory arising from the evidence of the defense is that when they were far from the shore, appellant Justo Blanco Candelario lost his hat and that, as he bent to pick it up, Pilar Vargas Ríos bent over him and fell into the water, where she died accidentally."

According to the testimony of Hilarión Cuevas Torres, witness for The People, the defendant and Pilar Vargas Ríos engaged in an argument following sexual intercourse because the defendant urged her to break up with her husband and to go and live with him. In view of Pilar's refusal, the defendant said: "I am going to overturn this boat. Anyone who is saved will go to the penitentiary." Thereupon he took out a knife from a coat, struck Pilar with it, and threw her into the water. Defendant then overturned the boat and all its occupants fell into the water. On cross-examination, this witness testified that when they were all in the water he heard the defendant say: "Let them drown there."

Witness Carmen Ramos testified as follows: "Then the fellow who was with me had his back turned to me also.

Justo Blanco [the defendant] then asked Pilar [the deceased] whether she loved him or her husband, to which she replied that she loved her husband, that she did not love him. He then said he was going to kill her, grabbed her, and·flung her into the water . . ."

Appellant contends that the theory and the evidence of The People were predicated on the fact that appellant's intent was to kill Pilar Vargas Ríos, and that since his defense was that the boat overturned accidentally the jury could only render a verdict of murder in the first degree, voluntary manslaughter, or of acquittal. Appellant next contends that the instruction on second-degree ·murder was prejudicial to him in view of the fact that, since the jury discarded first-degree murder, the verdict would have been voluntary manslaughter or acquittal, in the absence of the instruction on second-degree murder, which instruction resulted in a compromise verdict. In support of his contention, appellant cites *People* v. *Méndez*, 74 P.R.R. 853. The pertinent wording used there is as follows:

". . . In brief, as to the aspect under discussion, murder in the first degree includes the elements of deliberation and specific intent to kill. In the case of murder in the second degree, malice aforethought, without the specific deliberate intent to kill is enough, that is, without the intent to do an act resulting in death, but in virtue of the purpose to cause bodily injuries which may probably cause death, and actually cause death, without the person causing such injuries having the direct, specific and deliberate purpose to kill. The decisions of this Court have determined that murder in the first degree is characterized by the deliberation and specific intent to kill, unlike murder in the second degree. *The People* v. *Lasalle*, 18 P.R.R. 410, 412; *People* v. *Carrión*, 35 P.R.R. 828; *People* v. *Garcés*, 29 P.R.R. 961; *People* v. *Torres*, 34 P.R.R. 626; *The People* v. *Crespo*, 21 P.R.R. 285; *People* v. *Belardo*, 50 P.R.R. 491; *People* v. *Rosario*, 67 P.R.R. 346."

Appellant seemingly infers from above-quoted citation that, where the specific intent to kill is present in murder,

because it is so inferred from the evidence, it would establish first-degree murder but not second-degree murder. In other words, that the specific intent to kill is an exclusive element of first-degree murder. Perhaps the language employed in the *Méndez* case, *supra*, may lead to an erroneous interpretation of the law.

In the first place, when we stated in the *Méndez* case that "the decisions of this Court have determined that murder in the first degree is characterized by the deliberation and specific intent to kill, unlike murder in the second degree," we did not mean to say that second-degree murder is always characterized by the absence of specific intent to kill. In that case we correctly stated that "in the case of murder in the second degree, malice aforethought, without the specific *deliberate* intent to kill, is enough . . ." (Italics ours.) The decisions of this Court have maintained that the difference between the two degrees of murder consists in the absence of deliberation in the lesser offense.

With the exception of *People* v. *Garcés*, 29 P.R.R. 961, none of the cases cited in the *Méndez* case maintains that the specific intent to kill, but without deliberation, makes the crime of murder a first-degree murder. In *People* v. *Garcés*, *supra*, we stated as follows:

"According to the authorities, if a man inflicts a blow on another with malice aforethought and causes death, this may be murder, depending upon the circumstances as developed in the information itself or at the trial. *Demato* v. *People*, 35 L.R.A. (N. S.) 621, and notes; 13 R.C.L. 777; *People* v. *Figueroa*, 16 P.R.R. 354; 21 Cyc. 721.

"It is sufficient that the act done was malicious, deliberate and premeditated and caused death. If there was an intention at the time to cause death or the act informed against is one of those specifically enumerated in the law as constituting murder in the first degree, the defendant may be convicted of murder in that degree. If the act informed against is not one of those specifically enumerated in section 201 of the Penal Code and there was no intention to kill, the murder may be in the second degree, but any act which is malicious, premeditated and de-

liberate and causes death is bound to be murder in the first or second degree."

This language is most confusing; moreover, we do not believe it contains a correct statement of the law. It is erroneous to contend that if a man inflicts a blow on another with malice aforethought and causes death, the murder is always in the first degree if the intent to kill was present at the time. In that case, the death in first-degree murder would not have to be malicious, premeditated, and deliberate. It would be sufficient if it were malicious and premeditated but not *deliberate*. In other words, if there is malice aforethought and intent to kill, the offense would be murder in the first degree even if the death was not *deliberate*. This runs counter to the provisions of the Penal Code and to what has been said on other occasions, and which we now repeat, that *deliberation* is an element of every crime of murder in the first degree. What happens is that, since deliberation is a subjective act of the defendant, it cannot be established by direct evidence, and it is necessary, therefore, to resort to the facts of the case in order to determine whether deliberation may be rationally inferred. [1] *People* v. *Rosario*, 67 P.R.R. 346.

What we have stated with clarity, and undoubtedly it is the same theory that we intended to follow in the *Méndez* case, is that murder in the second degree may be committed

---

[1] Referring to the concept of deliberation, we stated in one of the footnotes in the opinion in the *Méndez* case the following:

". . . *People* v. *Bender*, 27 Cal. 2d 164, 183, 185, points out that the adjective 'deliberate' means 'formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on coolly and steadily, esp. according to a preconceived design; . . . Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; . . . unhurried; . . . Characterized by reflection; dispassionate; not rash.' Actually, the synthetic applicable definition must be that found in dictionaries, that is, to deliberate consists to consider carefully and thoroughly the reasons for and against, that is, the reasons of our decision or choice, before complying with or performing it. Whether defendant has deliberated as above stated is a question to be determined by the jury." (*People* v. *Méndez*, p. 865.)

even if the specific intent to kill is not present, provided the act is perpetrated by the accused with malice aforethought. In *People* v. *Belardo*, 50 P.R.R. 491, we said that perhaps a familiar case of murder in the second degree is where one person shoots at another with the intention merely to wound, but by reason of some carelessness or striking another object, he kills the victim directly or the nature of the wound causes his death or another is killed; that on a charge of murder in the second degree the defendant would be guilty, although he had no definite intention of killing, because his act was done with malice aforethought. See, also, *People* v. *Guzmán*, 18 P.R.R. 806; *People* v. *Alegría*, 36 P.R.R. 355; *People* v. *Carrión*, 35 P.R.R. 828.

In second-degree murder, it is enough that an illegal act be committed with malice aforethought and that this act produces death. In the example cited in the *Belardo* case, *supra*, if the act itself of firing at a person with the intent merely of injuring and not of killing him is malicious and premeditated, then the crime committed is murder in the second degree. However, this does not mean that if the malicious and premeditated act of firing is committed with the specific intent to kill, such offense is necessarily murder in the first degree, for, if the facts do not show that the definite intent to kill was preconceived as a consequence of the deliberation, then the offense committed would be second-degree murder. In other words, the definite intent to kill may be present, although it is not necessary that it always be so, in second-degree murder.

In Puerto Rico, as in California, where there exists a statute almost identical with ours, the specific intent to kill is an essential element of first-degree murder. As respects California, the cases of *People* v. *Holt*, 25 Cal. 2d 59; *People* v. *Thomas*, 25 Cal. 2d 880; *People* v. *Bender*, 27 Cal. 2d 164; *People* v. *Valentine*, 28 Cal. 2d 121, and *People* v. *Martínez*, 38 Cal. 2d 556, have not stated a new doctrine, as erroneously asserted in the *Méndez* case, to the effect that the specific intent to kill is not an essential element of first-degree

murder. [2] In those cases it is held that the phrase "specific intent to kill" is not synonymous with "malice aforethought," and that "malicious intent" and "malice aforethought" are not synonymous with "wilful, deliberate, and premeditated." This means, in our own words, that specific intent to kill does not import and is not equivalent to premeditated and deliberate killing. The definite intent to kill may exist in defendant's mind at the time of the killing, but if the facts do not disclose that the existence of the intent to kill is the result of a process of deliberation, the offense committed is murder in the second degree. Thus, California distinguishes between both degrees of murder by the absence of deliberation in the lesser offense. This does not imply, however, that California has stated the new doctrine that the specific intent to kill is not an essential element of murder in the first degree.

[2] In *People* v. *Holt, supra,* the court cited with approval the case of *People* v. *Howard,* 211 Cal. 322, where murder in the first degree is defined as follows:

"In the more recent case of *People* v. *Howard* (1930), *supra,* 211 Cal. 322, 329, the applicable rule was succinctly stated: 'to be murder of the first degree, under our statute, the killing must be premeditated, except when done in the perpetration of certain felonies; that is to say, *the unlawful killing must be accompanied with a deliberate and clear intent to take life.'*"

In *People* v. *Thomas, supra,* the following instruction to the jury was held to be erroneous:

". . . 'If the unlawful killing is done without the provocation and sudden passion *which reduces the offense to manslaughter,* or is done in the commission of an unlawful act, the natural consequences of which are dangerous to life, or is committed in the attempt to perpetrate a felony other than those mentioned in the description of murder in the first degree, or the circumstances of the killing show an abandoned heart, this is murder of the second degree, *unless the evidence proves the existence in the mind of the slayer of the specific intent to take life. If such specific intent exists at the time of such unlawful killing, the offense committed would of course be murder of the first degree.'* . . ."

That instruction clearly indicated to the jury that if the specific intent to kill existed at the time of the illegal killing, the offense committed was murder in the first degree. This, of course, excluded the element of "deliberation" which is indispensable in that offense. It was therefore held that the instruction was erroneous, not because of the fact that it was said that the specific intent to kill is an essential element of the offense of murder in the first degree, but because it was not stated in the instruction that the specific intent to kill which existed at the time of such unlawful

The afore-cited California cases confirm the theory that the "definite intent to kill" may be present in the offense of murder in the second degree, even if such intent is not a necessary element of that offense.[3]

■ Where in a prosecution for murder the charge is that the unlawful death was "intentional, premeditated, and deliberate," it is the province of the jury to determine the degree of the offense upon the entire evidence presented. The deliberations of the jury are, however, governed by legislative rules, to wit: in order for an offense to be murder in the first degree, the unlawful killing must be accompanied by the specific and deliberate intent to kill. *People* v. *Rosario, supra; People* v. *Thomas, supra,* and *People* v. *Bender, supra.* The decision of the jury must be supported by the

---

killing must have been the result of the deliberation, in order that the offense could be classified as first-degree murder. In *People* v. *Bender, supra,* it was held that murder of the first degree is a wilful act characterized by the presence of malice aforethought and by a deliberate and premeditated intent to kill. In *People* v. *Valentine, supra,* it is said:

". . . Some further confusion as to the degrees of murder may well also have been contributed by the instruction that, where provocation adequate to reduce an intentional killing to *manslaughter* is shown, 'although the intent to kill exists, it is not that *deliberate* and malicious *intent* which is an *essential element* in the crime of *murder.*' (Italics added) [by the California Court]. The language of the last quoted instruction is that of *People* v. *Freel,* (1874), 48 Cal. 436, 437, quoted in *People* v. *Elmore* (1914), 167 Cal. 205, 210 [138 P. 989], but it is incorrect in differentiating manslaughter from murder on the basis of *deliberate* intent and in declaring that *deliberate* intent is an essential element of murder. Deliberate intent, under the statute (Pen. Code, §§ 187, 189) is not an essential element of murder, as such. It is an essential element of one class only of first degree murder and is not at all an element of second degree murder."

From *People* v. *Martinez, supra,* we quote the following:

"A homicide is murder of the first degree when the accused, as the result of deliberation and premeditation, intended to take unlawfully the life of another. (Pen. Code, § 189; *People* v. *Bender,* 27 Cal. 2d 164, 178 [163 P. 2d 8.")])

[3] This question has been the object of discussion in other jurisdictions. See, for example, *State* v. *Van Vlack,* 65 P. 2d 736 (Idaho); *Ballentine* v. *State,* 132 S. W. 2d 348 (Ark.); *Wims* v. *State,* 4 S. E. 2d 418 (Ga.); *People* v. *Levan,* 64 N. E. 2d 341 (N. Y.); *Pitts* v. *State,* 23 N. E. 2d 673 (Ind.); *Spivey* v. *State,* 171 S. W. 2d 140 (Tex.); *State* v. *Russell,* 145 P. 2d 1003 (Utah); *State* v. *Kurz,* 37 A. 2d 808 (Conn.).

evidence, and when it has reasonable doubt as to the degree of the offense, it must give defendant the benefit of that doubt and find him guilty of murder in the second degree. *People v. Rosario, supra.* Let us re-examine the evidence to determine whether it supports the verdict of second-degree murder, and, consequently, whether the judge was justified in instructing the jury on that offense.

▮▮ On the day of the occurrences, the defendant had been drinking in the company of the deceased, Pilar Vargas Ríos, Carmen Ramos, and Hilarión Cuevas Torres, since 5 p. m., according to the evidence of the prosecution, and since 9 a. m., according to the evidence of the defendant. Sometime between 7 and 7:30 p. m., at defendant's invitation, the four of them went for a ride in his motor boat. When they were one mile off the shore, the defendant had sexual intercourse with Pilar. Shortly afterwards they engaged in an argument. The defendant urged Pilar to sever her relations with her husband and to live with him, but she refused, claiming that she loved her husband. Thereupon, the defendant wounded Pilar with a knife, threw her into the sea, and then overturned the boat.

There is no evidence in the record that prior to the argument the defendant had quarrelled with Pilar, or threatened her. On the contrary, the evidence shows that on the day of the occurrences they had been drinking amicably; that Pilar willingly accepted the invitation to go for a boat ride, and, moreover, that she had sexual relations with the defendant of her own free will. It is an indisputable fact that defendant inflicted a wound on Pilar and flung her into the water with the definite intent to kill her, but it was incumbent upon the jury to decide whether or not the intent to kill was the result of a process of deliberation. It could have concluded, as it did, that it was not. The proven facts led to that inference and, if the jury believed that Pilar's death was not deliberate and premeditated, it was bound to return a verdict of murder in the second degree. It is true that in order for

deliberation to be present, there need be no appreciable space of time between the specific intent to kill and the act of killing —*People* v. *Rosario, supra*—but this does not exclude the need for the intention to kill to be preceded by premeditation and deliberation. In *People* v. *Thomas, supra*, the doctrine is stated as follows:

"Since the decision in *People* v. *Sánchez* (1864), 24 Cal. 17, 30, it has been repeatedly declared that 'There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind,' but this is not the equivalent of saying that the *intention to kill* can be formed without being preceded by deliberation and premeditation. It is only a declaration that the act of killing may instantaneously follow the intention once the latter is finally formulated. It does not imply that mature reflection (deliberation and premeditation) need not precede the ultimate formation of the evil intention. By its very language it has reference only to the 'space of time between the intention to kill and the act of killing.' In other words, a murder is of the first degree no matter how quickly the act of killing follows the ultimate formation of the intention if that intention has been reached with deliberation and premeditation. This view of the law is manifest in the Sánchez case by the statement (at p. 30 of 24 Cal.) that 'The intent to kill must be the result of deliberate premeditation; it must be formed upon a pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation.' Neither the statute nor the court undertakes to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent which is truly deliberate and premeditated. The time would vary with different individuals and under differing circumstances. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly, but the express requirement for a concurrence of deliberation and premeditation excludes from murder of the first degree those homicides (not specifically enumerated in the statute) which are the result of mere unconsidered or rash impulse hastily executed." *People* v. *Thomas*, 25 Cal. 2d 880, 900–901 (1945).

The defendant herein could have conceived the intent to kill as a result of an unconsidered impulse upon feeling disappointed by Pilar's refusal to live with him, which impulse he hastily executed. This may constitute murder of the second degree. The court did not therefore err in instructing the jury on that offense.

 We concede that the evidence in the instant case is sufficient to support a verdict of murder in the first degree. Conceding, however, for the sake of argument, that the evidence did not warrant an instruction on second-degree murder, the error, if any, in giving such instruction would not be prejudicial to the defendant since the jury returned a verdict of second-degree murder. Appellant's contention that, since the jury discarded first-degree murder, the verdict would have been for acquittal had not instructions on second-degree murder been given, rests on a fallacy. Had the jury believed the defendant's theory—that Pilar's death was accidental—the verdict would have been for acquittal and the jury would never have found him guilty of murder, in either of its two degrees.

In California it is held that an error in the instructions to the jury on a lesser offense which are not warranted by the evidence, is not prejudicial to the defendant and does not render invalid a verdict for a lesser offense. In Fricke's *California Criminal Law*, 4th ed., p. 38, this doctrine is summed up as follows:

"While it has been held error to instruct the jury on the law of a lesser included offense where, under the evidence, the accused was either guilty of the offense charged or not guilty, the latter and best considered decisions hold that in such a case the defendant cannot complain where the jury which found him guilty returned a verdict of a crime of a lesser degree which was more favorable to him than the facts warranted. (*People* v. *Tugwell,* 32 Cal. App. 620; *People* v. *Stevens,* 5 Cal. 2d 92; *People* v. *Washburn,* 54 Cal. App. 124; *People* v. *Alderson,* 105 Cal. App. 202; *People* v. *Jenkins,* 118 Cal. App. 115; *People* v. *Walcott,* 139 Cal. App. 355; *People* v. *Rucker,* 11 Cal. App. 2d

609; *People* v. *Cota*, 53 Cal. App. 2d 455.) In such cases the rational interpretation of the verdict must be that the jury found the defendant guilty under the charge upon which he was tried and convicted the defendant of the lesser offense either through a misunderstanding of the law which led them to the conclusion that it was the lesser offense of which the defendant was guilty or from a desire to extend a degree of leniency to the accused, but, regardless of the error in favor of the accused, the verdict is valid."

This doctrine has been sanctioned in *People* v. *Ghione*, 115 Cal. App. 2d 252 (1953), and we fully subscribe to it.[4] Consequently, the first three errors were not committed.

The fourth error assigned is frivolous. The evidence of the prosecution is sufficient to support the conviction of the defendant for the offense of carrying weapons. It is true that the weapon was not seized, but one of the prosecution witnesses testified at length on such weapon and duly identified it. This witness saw when the accused took from a coat the knife with which he struck Pilar. The blade of that knife was approximately four inches long. The witness had formerly seen that very knife in the possession of the accused. Moreover, Dr. Padilla testified that the deceased received a wound on the right side of the thorax which penetrated one of the lungs. There was further evidence that the wound was produced by a flat object, which could have been a knife. "The seizure of the weapon and its introduction in evidence are not necessary prerequisites for a conviction [as alleged by the *Fiscal* of this Court], if the other evidence is sufficient to conclude that the defendant was actually carrying a prohibited weapon." *People* v. *Ríos*, 41 P.R.R. 759; *People* v. *Guzmán*, 52 P.R.R. 444; *People* v. *Sánchez*, 50 P.R.R. 689. That other evidence was offered here.

Since none of the errors assigned was committed, the judgments appealed from will be affirmed.

---

[4] In *People* v. *Rivera*, 67 P.R.R. 179, we held that a verdict of voluntary manslaughter is erroneous where the evidence reveals that the crime committed is murder in the second degree, but since this error, far from prejudicing the defendant, favored him, it is not reversible error.